WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence J. Warfield,<br><br>   Appellant,<br><br>v.<br><br>Thorsten Froemming,<br><br>   Appellee. | No. CV-22-08056-PCT-GMS<br><br>BK No. 3:21-bk-07960-DPC<br><br>**ORDER** |

  Before the Court is Lawrence J. Warfield's ("Appellant") appeal of the Bankruptcy Court's order ruling that debtor, Thorsten Froemming ("Appellee"), was entitled to claim the homestead exemption for his motor home under Arizona's homestead exemption statute. For the following reasons, the Bankruptcy Court's decision is affirmed.

## BACKGROUND

  This appeal concerns whether a debtor can claim the homestead exemption for a motor home under Arizona's homestead statute. There are no disputed facts. Mr. Froemming filed for bankruptcy on October 22, 2021, under Chapter 7 of the United States Bankruptcy Code. He claimed the Arizona homestead exemption for the $15,000 value of his motor home. The parties do not dispute that he actually resided in the motor home. The Trustee, however, filed an objection to Mr. Froemming's claim, arguing that a motor home is not covered under the statute's "mobile home" provision. The Bankruptcy Court overruled the objection. The Trustee timely appealed.

## DISCUSSION

I. **Legal Standard**

On appeal, district courts review the Bankruptcy Court's legal determinations *de novo*. *In re Johnston*, 21 F.3d 323, 326 (9th Cir. 1994). Additionally, courts review decisions not to certify questions of state law to a state high court for abuse of discretion. *Syngenta Seeds, Inc. v. County of Kauai*, 842 F.3d 669, 674 (9th Cir. 2016).

II. **Analysis**

**A. Is the Motor Home a Mobile Home Under the Homestead Exemption?**

The debtor may claim the homestead exemption for his motor home because the statute is ambiguous and should be construed in favor of the debtor, especially in light of the purpose of the exemption. This case is purely a matter of statutory interpretation because no facts are in dispute. The relevant statute, A.R.S. § 33-1101 provides:

> Any person eighteen years of age or over, married or single, who resides within this state may hold as a homestead exempt from execution and forced sale, not exceeding $250,000 in value, any one of the following: (1) the person's interest in real property in one compact body on which exists a dwelling house in which the person resides; (2) the person's interest in one condominium or cooperative in which the person resides; (3) a mobile home in which the person resides; (4) a mobile home in which the person resides plus the land on which that mobile home is located.

A.R.S. § 33-1101(A)(1)-(4). The exemption statutes do not define mobile home or motor home.

Arizona requires that "[w]ords and phrases shall be construed according to the common and approved use of the language." A.R.S. § 1-213. "If the statute is clear and unambiguous, we apply the plain meaning of the statute." *Hourani v. Benson Hosp.*, 122 P.3d 6, 10 (Ariz. Ct. App. 2005). But, if a statute is ambiguous, "we look to the rules of

statutory construction and consider the statute's context; its language, subject matter, and historical background; its effects and consequences; its spirit and purpose. *Stein v. Sonus USA, Inc.*, 150 P.3d 773, 774 (Ariz. Ct. App. 2007) (cleaned up). "A statute is ambiguous if there is uncertainty about the meaning or interpretation of its terms or if the statute's text allows for more than one rational interpretation." *Id.* (cleaned up).

Specifically at issue here is the meaning of the term "mobile home" in the homestead statute. The first interpretation, offered by Appellant, is that "mobile home" means a distinct type of home that is not self-propelled, but rather is towed to a plot of land. To support this interpretation, Appellant offers the fact that in other places in Arizona's statutes, the legislature expressly defines "motor home" or "recreational vehicle" as distinct from a mobile home. Additionally, Appellant argues that the phrase "mobile home" has a common colloquial usage in reference to a home without a motor. Alternatively, Appellee argues that "mobile home" means what the individual words describe—a home that is mobile. The Bankruptcy Court agreed with this interpretation, emphasizing that in its view, "mobile home" can be an umbrella term for several types of homes that are not affixed to the property on which they sit. Audio Record of Hearing Held, *In re Froemming*, No. 3:21-BK-07960-DPC (Bankr. D. Ariz. Mar. 24, 2022) (Doc. 39)[1]. In support of that view, Appellee offers the overarching purpose of the statute, which is to ensure that debtors maintain a residence even after filing bankruptcy. Additionally, Appellee points to the legislature's express exclusion of motor vehicles from the "mobile home" definition in another section of Arizona's statutes. (Doc. 10 at 9-10.)

Either of these interpretations appears reasonable. In several other statutory sections, "mobile home" is defined, but in the homestead exemption section, it is not. Thus, the Court is left to begin with the plain meaning of the terms. And while a "mobile home" can be the type of non-self-propelling home that Appellant describes, there is no such limitation in the terms of the statute. Additionally, the statute lists two different situations

---

[1] For brevity, any citations to the Bankruptcy Court record in this case are cited as (Bankr. Doc.). The full citation to the docket is: *In re Froemming*, No. 3:21-BK-07960-DPC (Bankr. D. Ariz.).

in which a mobile home may be exempted: "a mobile home in which the person resides" or "a mobile home in which the person resides plus the land on which that mobile home is located." This indicates that, in at least some circumstances, a mobile home can be viewed as independent of the land in which it sits. At the very least, this creates an ambiguity as to whether "mobile home" is an umbrella term for "mobile" "homes" or refers to a particular type of home, exclusive of a motor home.

As such, the Court turns to context and rules of statutory construction. Generally, Arizona "[s]tatutes shall be liberally construed to effect their objects and promote justice." A.R.S. § 1-211(B). The Arizona Supreme Court has also said that "the homestead laws should be interpreted liberally to advance the objectives of the statutes" which is "to protect the family against the forced sale of home property from certain creditors." *Matcha v. Winn*, 638 P.2d 1361, 1364 (Ariz. Ct. App. 1981). In light of these rules of construction, it is likely that the term "mobile home" carries the broader, rather than narrower, meaning in the homestead statute. Importantly, the underlying purpose of the statute is to ensure that an individual or family retains some form of a residence, even when filing for bankruptcy. The fact that a home may have a motor on it does not appear to undermine that purpose. To the contrary, whether a mobile home must be towed to a plot of land or can propel itself on its own bears no relation to whether its exemption protects the family against the forced sale of home property. In other words, the fact that a debtor's home has a motor makes it no less the debtor's home.[2]

Further, Appellant and Appellee both highlight the fact that in a separate statutory section, the Arizona Mobile Home Parks Residential Landlord and Tenant Act, a motor home is expressly excluded from the definition of a mobile home. A.R.S. § 33-1409(14)

---

[2] The requirement that the debtor actually resides in the home protects against several of the "absurd" results that Appellant alleges, including considering airplanes, boats, and cardboard boxes mobile homes. Some of those cases may be more difficult, but they are not before this Court. In this case, as contrasted with an airplane or a cardboard box, a motor home has only one fundamental difference from the type of mobile home Appellant describes—a motor. This difference does not affect a person's ability to prove that he or she resides in the motor home. Other variations of mobile homes may differ more dramatically than a traditional "mobile home," and the factual inquiry into whether the debtor in fact resides there, as well as the legal inquiry into whether these different forms of mobile homes are encompassed by the statute, will protect against absurd results.

("Mobile home . . . [d]oes not include . . . a recreational vehicle such as a motor home."). While perhaps this may highlight the fact that the Arizona Legislature views mobile homes and motor homes as mutually exclusive in the statutes, a more likely view is that the express carveout in this section illustrates the legislature's understanding that motor homes may otherwise be captured by the term "mobile home." Thus, its failure to create such an express exclusion in the homestead statutes supports the conclusion that the term "mobile home" encompasses a motor home for the purposes of the exemption.

As the parties and the Bankruptcy Court note, there is little to no Arizona precedent on the question at issue. However, twenty years ago, a District of Arizona Bankruptcy Court case addressed this same question squarely, determining that based on the text and purpose of the statute, and in light of other states' similar statutes, a motor home qualifies as a mobile home under the statute. *See In re Irwin*, 293 B.R. 28 (Bankr. D. Ariz. 2003). Since then, it does not appear that any Arizona state courts have spoken further on the issue. However, in *Chas Roberts Air Conditioning, Inc. v. Pekrul*, the Arizona Court of Appeals implied that it could view mobile homes and motor homes interchangeably under the statute. No. 1 CA-CV-10-0593, 2012 WL 1571400, at *1 (Ariz. Ct. App. May 3, 2012). To be sure, in that case, the precise issue was not before the Court—the Court decided the case based on whether the debtor could prove he actually resided in his motor home. However, the Court appeared to assume that if he did, the fact that it was a motor home, rather than a "mobile home," as defined by Apppellant, would not preclude the exemption. In fact, the Court apparently used the terms "mobile home" and "motor home" interchangeably, stating "Section 33-1101 plainly states that a person is only entitled to a homestead exemption in a motor home 'in which the person resides.'" *Id.* at *2. Additionally, *Chas Roberts* was decided after *In re Irwin*, and the appellee discussed *In re Irwin* in their briefing. Appellee's Response Brief, *Chas Roberts Air Conditioning, Inc. v. Pekrul*, 2011 WL 6423170, at *16, 20 (Ariz. Ct. App. Nov. 2, 2011). Thus, if the Arizona Court of Appeals took issue with the holding of *In re Irwin*, it certainly could have disposed of the case on those grounds rather than engaging in the factual inquiry as to whether the

debtor lived in the motor home. While not dispositive of this case, it helps demonstrate how the Arizona Court of Appeals may view the issue.

The Arizona Supreme Court has also said that if the meaning of the homestead statute is doubtful, "we may look to the reasoning of other courts upon similar statutes, if there be any, to aid us in the construction of our statute." *Wuicich v. Solomon-Wickersham Co.*, 157 P. 972, 972 (Ariz. 1916). In Idaho, for example, the homestead exemption protects "the dwelling house or the mobile home in which the owner resides," much like the Arizona statute. *In re Peters*, 168 B.R. 710, 711 (Bankr. D. Idaho 1994). While the homestead statutes do not define "mobile home" or "motor home," the Court turned elsewhere in the statutes for definitions and found, just as Appellant points out here, that "the fundamental difference between a motor home and a manufactured or mobile home as defined by these other provisions of the Idaho Code is that a motor home is intended to be used as a self-propelled vehicle whereas a mobile or manufactured home is to be used as a dwelling." *Id.* In light of the legislature's inclusion of mobile homes in the homestead exemption, the Court questioned whether the other statutes defining a motor home "dictate that a motor home cannot be a dwelling which may be exempted as a homestead," and determined they did not. *Id.* It stated: "to hold that a motor home cannot be construed to be a mobile home or dwelling house for homestead purposes would be to elevate form over substance and would clearly not be construing the exemption statutes liberally in Debtors' favor." *Id.* at 712. So too here. As the Court noted, "there would be no issue present in this case but for the fact that Debtors' home has an engine. . . . simply because Debtors' dwelling has wheels and can be driven away does not change the fact that this is Debtors' only residence and that they are entitled to similar protections." *Id.* at 712.

In the Arizona statutes, too, it is clear that the primary difference between a traditional "mobile home" and a motor home is self-propulsion. *See, e.g.*, A.R.S. § 33-2102(18)(b) (defining motor home or recreational vehicle as "a motor home designed to provide temporary living quarters for recreational, camping or travel use and built on or permanently attached to a self-propelled motor vehicle chassis"). Thus, to the extent that

- 6 -

the definitions of motor home elsewhere in the statutes are relevant, they lead to the conclusion that the primary difference between a mobile home and a motor home—a motor—does not weigh heavily on the homestead exemption analysis. The statute does not provide or indicate that the term "mobile home" in the homestead statute is intended to exclude homes with motors. Thus, construing the statute in the debtor's favor, and because the legislature does not appear to have precluded such a home from the homestead exemption, the Bankruptcy Court did not err in determining that a debtor may claim the exemption in his mobile home under Arizona law.

### B. Should the Bankruptcy Court Have Certified the Question?

The Bankruptcy Court's decision not to certify the question to the Arizona Supreme Court was not an abuse of discretion. Under Arizona law, "the Supreme Court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court if there are involved in any proceedings before the certifying court questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state." A.R.S. § 12-1861. "Where this certification procedure is available and there is 'doubt as to local law,' the use of such certification procedure is not 'obligatory' and 'in a given case rests in the sound discretion of the federal court.'" *Cont'l Promotion Grp., Inc. v. Garvin*, No. CV 08-0070, 2009 WL 10673482, at *6 (D. Ariz. May 22, 2009) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974)).

The Bankruptcy Court did not explain in detail why it did not certify the question to the Arizona Supreme Court. (Bankr. Docs. 39, 41.) Nevertheless, its failure to certify the question was not an abuse of discretion. As noted above, *In re Irwing* was decided nearly twenty years ago, and apparently without objection since by the Arizona Legislature or courts. Additionally, in *Chas Roberts*, the Arizona Court of Appeals implied that it views motor homes as equivalent to mobile homes under the homestead statute. Further, where there is doubt or ambiguity in the statute, the Arizona Supreme Court has instructed that it

is permissible to turn to other states with similar statutes, as the Court does here. Thus, although there is no controlling precedent in Arizona's case law, there were several interpretive tools available to the Bankruptcy Court and this Court, including the purpose of the statute, the relevant rules of construction, the history of the relevant Arizona case law, and other states' approaches to the same question. It was therefore not an abuse of discretion for the Bankruptcy Court to resolve the issue using these tools, rather than certifying the question to the Arizona Supreme Court.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that the Bankruptcy Court's Order Denying Trustee's Objection to Claimed Exemption is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk to terminate this case.

Dated this 24th day of March, 2023.

_____
G. Murray Snow
Chief United States District Judge